IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO


THE STATE OF ARIZONA, )
)
Petitioner, )
)
v. )        2 CA-SA 2004-0057
)        DEPARTMENT B
HON. HOWARD FELL, Judge Pro )
Tempore of the Superior Court of the State )
of Arizona, in and for the County of Pima, )        O P I N I O N
)
Respondent, )
)
and )
)
EDWARD JOHN SANDERS, )
)
Real Party in Interest. )
)


SPECIAL ACTION PROCEEDING

Pima County Cause No. CR-20002900

RELIEF GRANTED IN PART

Barbara LaWall, Pima County Attorney
  By Amy Pignatella Cain and Elizabeth Hurley                     Tucson
                                                    Attorneys for Petitioner


Higgins & Higgins, P.C.
  By Harold L. Higgins, Jr.                                       Tucson
                                          Attorneys for Real Party in Interest

E S P I N O S A, Judge.

¶1　　　A jury found real party in interest Edward John Sanders guilty of sexual assault, sexual abuse, kidnapping, second-degree burglary, and first-degree murder. Because petitioner State of Arizona had withdrawn its previously filed notice of intent to seek the death penalty, the remaining sentencing options were a natural life prison term or a life term with the possibility of parole after twenty-five years. *See* A.R.S. § 13-703(A). Before the sentencing hearing, the respondent judge held two status conferences and entered orders that resulted in the filing of this petition for special action. The respondent judge found that the United States Supreme Court's recent decision in *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), applied to Sanders's sentencing and concluded that, before he could impose a natural life prison term on the first-degree murder charge, the state would be required to prove to a jury beyond a reasonable doubt the aggravating circumstances the state previously had alleged. The judge apparently believed the sentencing factors he could consider in deciding between the two options were those set forth in § 13-703 rather than the factors listed in A.R.S. § 13-702.

¶2　　　The state petitioned for special action relief from those rulings. We are thus presented with two issues in this special action. We must decide whether *Blakely* requires a jury to find beyond a reasonable doubt that certain aggravating circumstances exist before a trial judge in Arizona may sentence a defendant convicted of first-degree murder to a natural life prison term rather than life with the possibility of parole. We must also determine

2

whether A.R.S. § 13-703.01(Q), which requires judges to consider the aggravating circumstances in § 13-702 in choosing between these sentencing alternatives, applies retroactively to persons who committed offenses before the effective date of the statute. On the latter question, we deny relief and affirm the respondent judge's orders insofar as they suggest § 13-703.01(Q) may not be retroactively applied. However, because we conclude that *Blakely* does not apply, Sanders is not entitled to a jury trial on the aggravating circumstances. We therefore accept jurisdiction of this special action and grant partial relief by reversing those portions of the respondent judge's orders that are to the contrary.

## PROCEDURAL BACKGROUND

¶3        On June 11, 2004, a jury found Sanders guilty of first-degree murder and other offenses related to his July 2000 sexual assault and murder of the eighty-eight-year-old victim. The state had initially filed a notice that it would be seeking the death penalty for the murder charge. It also gave notice of its intent to prove the following aggravating circumstances for sentencing purposes: Sanders had committed the offense in an especially heinous, cruel, or depraved manner; he was an adult at the time he committed the offense; and the victim was seventy years of age or older. Before trial, however, the state withdrew the notice seeking the death penalty, leaving as the two remaining sentencing alternatives a natural life term of imprisonment or a life term with the possibility of parole after twenty-five years. *See* § 13-703(A).

¶4        On June 24, the United States Supreme Court decided *Blakely*. The Court found the State of Washington's non-capital sentencing scheme unconstitutional based primarily on

3

the Court's earlier decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The respondent judge asked the parties to submit memoranda addressing whether *Blakely* and § 13-703.01(Q), enacted well after Sanders had committed the offenses, applied to Sanders's sentencing process. That statute requires a sentencing judge in a non-capital, first-degree murder case to consider the aggravating and mitigating factors in § 13-702 rather than those in § 13-703.

¶5 After two status conferences on these issues, the respondent judge concluded in orders filed on July 20 and August 2 that *Blakely* applied. Thus, the respondent judge ruled that a jury would be required to find beyond a reasonable doubt the aggravating circumstances the state had alleged in September 2000, and that the state would be limited to those factors, before Sanders could be sentenced to a natural life prison term. Neither the respondent judge's orders nor the transcripts of the status conferences make clear whether he believed he had to consider the aggravating circumstances listed in § 13-703 or the factors listed in § 13-702, as directed by § 13-703.01(Q). But the state's allegations are such that they appear to fall under § 13-703. And, at oral argument on this petition, the parties agreed the respondent judge intended to consider only the factors set out in that statute.

¶6 The state contends the respondent judge abused his discretion or acted in excess of his authority by finding *Blakely* applies. The state maintains the respondent judge erred by concluding that, before he can sentence Sanders to a natural life prison term, a jury must find the state has proved beyond a reasonable doubt the aggravating circumstances of which the state previously had given notice. The state also maintains that § 13-703.01(Q) applies to

4

Sanders's sentencing and that, consequently, the respondent judge must consider the factors under § 13-702, not § 13-703.

## SPECIAL ACTION JURISDICTION

¶7        We accept jurisdiction of this special action for several reasons. First, the state does not have an equally plain, speedy, or adequate remedy by appeal. *See* Ariz. R. P. Spec. Actions 1, 17B A.R.S. The respondent judge's orders are interlocutory in nature and the state contends it could not challenge them after a judgment of conviction and sentence are imposed. *See generally* A.R.S. § 13-4032 (setting forth kinds of orders from which the state has a right to appeal in criminal cases). Even assuming, without deciding, that the state could raise the issues after sentencing, its remedy would not be equally plain, speedy, or adequate because the state would have then proceeded in accordance with the order, presumably proving the aggravating circumstances beyond a reasonable doubt to a jury. Second, our review of the respondent judge's orders requires us to consider the applicability of *Blakely* and to interpret §§ 13-703 and 13-703.01(Q), questions of law that are particularly appropriate for review by special action. *See State ex rel. Romley v. Fields*, 201 Ariz. 321, 35 P.3d 82 (App. 2001); *see also ChartOne, Inc. v. Bernini*, 207 Ariz. 162, 83 P.3d 1103 (App. 2004) (interpretation of state constitution and civil rule are questions of law appropriate to special action review); *Campbell v. Superior Court*, 186 Ariz. 526, 527, 924 P.2d 1045, 1046 (App. 1996) ("Special action review is an appropriate means to determine whether there is a right to a jury trial.").

¶8        In addition, the questions raised are of first impression and statewide importance. *See Inzunza-Ortega v. Superior Court*, 192 Ariz. 558, 968 P.2d 631 (App.

1998).  In the wake of *Blakely*, trial and appellate courts are wrestling with its applicability to a variety of statutes and circumstances.  Clearly, the ramifications of *Blakely* on Arizona's sentencing statutes are potentially far-reaching.  The state urges us to accept jurisdiction to give guidance to trial courts faced with the decision whether to sentence murder defendants to a natural life prison term or life with the possibility of parole.  Similarly, the question whether § 13-703.01(Q) may be retroactively applied to defendants who committed crimes before the statute's effective date has yet to be determined.  Both issues are particularly suited for special action review.

### IS § 13-703.01(Q) RETROACTIVELY APPLICABLE?

¶9        The state first contends the respondent judge erred by finding that he must consider the aggravating factors listed in § 13-703 (and only those factors of which the state previously gave notice) in deciding whether to sentence Sanders to a prison term of natural life or life with the possibility of parole after twenty-five years.  The state argues that § 13-703.01(Q), which requires a judge to consider the aggravating factors in § 13-702, applies to Sanders's sentencing because it is not a change in the existing law but, rather, clarifies what the legislature had always intended § 13-703 to mean, notwithstanding our supreme court's decision in *State v. Viramontes*, 204 Ariz. 360, 64 P.3d 188 (2003).  We disagree.

¶10       We begin our analysis with the general principle that a criminal defendant must be punished with the penalty that existed at the time the offense was committed.

6

A.R.S. § 1-246; *see also O'Brien v. Escher*, 204 Ariz. 459, 65 P.3d 107 (App. 2003).[1] To do otherwise would implicate the state and federal prohibitions against enacting *ex post facto* laws. *See* U.S. Const. art. I, § 10, cl. 1; Ariz. Const. art. II, § 25. When Sanders committed the murder in July 2000, A.R.S. § 13-1105(C) stated that "[f]irst degree murder is a class 1 felony and is punishable by death or life imprisonment as provided by section 13-703." 2000 Ariz. Sess. Laws, ch. 50, § 2. At that time, § 13-703(A) provided that a person convicted of first-degree murder could be sentenced to death or natural life, or life with the possibility of parole. 1999 Ariz. Sess. Laws, ch. 104, § 1. In *Viramontes*, decided in January 2003, our supreme court held that, under the plain language of § 13-703(A), "the aggravators in section 13-703 are the only ones permitted in a first degree murder prosecution where the state has not sought the death penalty." 204 Ariz. 360, ¶ 15, 64 P.3d at 190.

¶11 Vacating this court's decision, *State v. Viramontes*, 200 Ariz. 452, 27 P.3d 809 (App. 2001), the supreme court rejected the state's argument that § 13-703 is implicated only when a sentencing judge is choosing between the death penalty or a term of life imprisonment. The supreme court relied on what it considered the clear and unambiguous language in

---

[1]We note that, when the legislature amended the capital sentencing statutes in response to the United States Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), it specified that the amendments to A.R.S. §§ 13-703 and 13-703.02 and the addition of § 13-703.01 were to apply "to any sentencing or resentencing proceeding on any first degree murder case that is held after the effective date of this act," or August 1, 2002. 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, § 7(A). There is no similar applicability provision for § 13-703.01(Q). In any event, we would be required to disregard such a provision if it were to result in the unconstitutionally retroactive application of the statute. *See State v. Murray*, 194 Ariz. 373, 982 P.2d 1287 (1999).

§ 13-703(A) that the statute and all of its provisions were applicable to all first-degree murder convictions, not just capital cases. The court further noted that § 13-702 "expressly applies only to class 2 through class 6 felonies, with subsection (F) thereof stating that the statute has no effect on first degree murder sentencings." 204 Ariz. 360, ¶ 9, 64 P.3d at 190. In that regard, § 13-702(F) provided, as it does now, that it has no effect on "any provision of law that imposes the death penalty . . . [or] that expressly provides for imprisonment for life." Finally, the court held that in a non-capital case, the aggravating factors need only be supported by reasonable evidence rather than be proved beyond a reasonable doubt.

¶12 In May 2003, about five months after the supreme court decided *Viramontes* and presumably in response to that case, the legislature amended § 13-703.01, adding subsection (Q), which states:

> If the death penalty was not alleged or was alleged but not imposed, the court shall determine whether to impose a sentence of life or natural life. In determining whether to impose a sentence of life or natural life, the court:
>
> 1. May consider any evidence introduced before sentencing or at any other sentencing proceeding.
>
> 2. Shall consider the aggravating and mitigating circumstances listed in § 13-702 and any statement made by a victim.

2003 Ariz. Sess. Laws, ch. 255, § 2. The effective date of the statute was September 18, 2003, ninety days after the legislative session ended. *See* Ariz. Const. art. IV, pt. 1 § 1(3) ("no Act passed by the Legislature shall be operative for ninety days after the close of the session of the Legislature enacting such measure" except under certain circumstances).

8

¶13     The state contends § 13-703.01(Q) was merely a clarification by the legislature of what it had always intended § 13-703 to mean: a sentencing judge must consider the factors in § 13-702, not those in § 13-703, in deciding whether to sentence a defendant convicted of non-capital first-degree murder to a natural life prison term or life with the possibility of parole. The state asserts that, in *Viramontes*, the supreme court misinterpreted § 13-703 and that the legislature enacted the new provision to clarify its initial intent. We disagree for several reasons.

¶14     First, the state cites no legislative history or other support for its assertion that § 13-703.01 was merely intended to clarify § 13-703. Nor does anything in the statute itself support this contention. Rather, on its face, §13-703.01(Q) expressly changes the first-degree murder sentencing statutes, requiring for the first time that a trial judge consider factors listed in § 13-702 in choosing between a natural life prison term or life with the possibility of parole. *See generally Viramontes* (finding § 13-703 and aggravating factors in that statute clearly applicable to trial court's decision to sentence first-degree murder defendant to natural life or life with the possibility of parole). Additionally, when legislators amend a statute, "'we must presume they intended to change existing law rather than perform a futile act.'" *Rotter v. Coconino County*, 169 Ariz. 269, 274, 818 P.2d 704, 709 (1991), *quoting Lake Havasu City v. Mohave County*, 138 Ariz. 552, 558, 675 P.2d 1371, 1377 (App. 1983).

¶15     Because we conclude § 13-703.01(Q) changed the law, the state's reliance on *Vasquez v. North County Transit District*, 292 F.3d 1049 (9th Cir. 2002), is necessarily misplaced. In *Vasquez*, the Ninth Circuit Court of Appeals stated that "'a statute that merely

9

*clarifies*, rather than changes existing law' may be 'applied to transactions predating its enactment.'" *Id.* at 1056, *quoting W. Sec. Bank v. Superior Court*, 933 P.2d 507, 514 (Cal. 1997). As the court noted in that case, the California legislature had made clear its intent to clarify, not change, the existing law. Quoting the statute, the court stated: "The legislature explained that the amendment protected the common law status quo with respect to the independent cause exception to the firefighter's rule [by providing]: 'This section is not intended to change or modify the common law independent cause exception to the firefighter's rule.'" *Id*. at 1057. Perhaps more importantly, unlike here, there was no pre-amendment case interpreting that statute and conflicting with the legislative intent later expressed in that amendment.

¶16     The state also relies on this court's decision in *O'Brien* for the proposition that the legislature may enact a statute to clarify a previous statute. There, we addressed whether amendments to A.R.S. § 13-901.01 and the supreme court's interpretation of that statute in *State v. Estrada*, 201 Ariz. 247, 34 P.3d 356 (2001), applied retroactively to a defendant who had committed his offenses before the statute was amended and the case decided. But *O'Brien* does not support the state's proposition. The question in *O'Brien* was whether *Estrada*'s interpretation of § 13-901.01 was retroactive; there was no statute enacted after *Estrada* was decided that conflicted with or purported to overrule *Estrada*. Although the retroactivity of

10

§ 13-901.01 was a separate issue, the defendant was not claiming that the statute clarified existing law. Instead, the statute changed the law entirely.[2]

¶17    Assuming, however, the legislature intended § 13-703.01(Q) to be a clarification of § 13-703 rather than a change in the law, as the state contends, it was not within the legislature's province to retroactively nullify *Viramontes*. A legislative attempt to retroactively overrule a decision by the courts of this state interpreting a statute violates the separation of powers doctrine. *State v. Murray*, 194 Ariz. 373, 982 P.2d 1287 (1999). It is for the legislative branch to enact the laws and for the judicial branch to interpret them. *See Cronin v. Sheldon*, 195 Ariz. 531, ¶ 30, 991 P.2d 231, 238 (1999) (finding preamble to Employment Protection Act, which purported to invalidate supreme court's decision in *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025 (1985), "devoid of operative effect" because "it manifest[ed] the legislature's intent to usurp judicial authority in violation of the separation of powers doctrine"); *see also* Ariz. Const. art. III (dividing powers of state government into legislative, executive, and judicial branches and stating that, "except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the

---

[2]Division One of this court's decision in *Nation v. Colla*, 173 Ariz. 245, 841 P.2d 1370 (App. 1991), upon which the state also relies, is similarly distinguishable. There, the court found no need to determine whether the supreme court's decision in *Pritchard v. State*, 163 Ariz. 427, 788 P.2d 1178 (1990), was retroactively applicable because *Pritchard* had held that the time limits in A.R.S. § 12-821, Arizona's claims-notice statute, were not jurisdictional and never had been. There was no retroactivity issue because, as in *O'Brien*, the decision declared what the law had always been.

others"); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60, 73 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

¶18 We find particularly instructive our supreme court's decision in *Murray*. Reiterating the separation of powers principles it had discussed at length in *San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, 972 P.2d 179 (1999), the court held that the legislature could not retroactively amend A.R.S. §§ 13-604 and 13-604.02 in order to "overrule" the supreme court's decision in *State v. Tarango*, 185 Ariz. 208, 914 P.2d 1300 (1996). In *Tarango*, the court had employed the rule of lenity in construing two sentencing statutes the court regarded as conflicting on parole eligibility. Shortly after the court decided *Tarango*, the legislature amended the statutes, stating: "It is the intent of the legislature to overrule . . . *Tarango* . . . and to affirm the original intent of the legislature as enunciated in *State v. Behl*, 160 Ariz. 527, 774 P.2d 831 (App. 1989)." 1997 Ariz. Sess. Laws, ch. 34, § 3.

¶19 The supreme court acknowledged in *Murray* that the legislature, unlike when it added § 13-703.01(Q), had made clear its intent that the amendments were to apply retroactively "to a prisoner sentenced before the amendments were adopted." 194 Ariz. 373, ¶ 1, 982 P.2d at 1287. But the court refused to so apply the amendments, stating:

> These principles, so recently restated in *San Carlos*, lead to only one conclusion: the legislature cannot overrule and change *Tarango*'s interpretation of the statute and apply it on a retroactive basis. It may change the statute for prospective application, but cases, including the present one, must be decided on the basis of the court's interpretation of the substantive law that existed at the time the events in question occurred. That interpretation, binding under the separation of powers embodied in article III of our constitution, cannot be overruled. As a

12

general matter, the separation of powers doctrine leaves creation of future statutory law to the legislative branch and determination of existing law and its application to past events to the judicial branch.

*Id.* ¶ 9.

¶20 Thus, assuming the legislature intended § 13-703.01(Q) to clarify § 13-703 as it existed at the time Sanders committed the offense, as the state contends, we are constrained to follow our supreme court's interpretation of § 13-703 in *Viramontes*. Once the supreme court interpreted § 13-703, that interpretation became part of the statute. *Galloway v. Vanderpool*, 205 Ariz. 252, 69 P.3d 23 (2003). We now turn to the question whether § 13-703.01(Q) applies retroactively to Sanders's sentencing.

¶21 When the legislature enacted § 13-703.01(Q) in 2003, it did not expressly state that it applies retroactively. Section 1-244, A.R.S., provides that "[n]o statute is retroactive unless expressly declared therein." Therefore, unless a statute expressly applies retroactively, it presumptively applies prospectively. But as we previously stated, § 1-246 provides that a criminal defendant must be punished with the penalty that existed at the time the defendant committed the offense. *See* ¶ 10, *supra*. Imposing a different, more onerous penalty implicates not only that statute but also the state and federal prohibitions against the enactment of *ex post facto* laws. U.S. Const. art. I, § 10, cl. 1; Ariz. Const. art. II, § 25; *see also Dobbert v. Florida*, 432 U.S. 282, 97 S. Ct. 2290, 53 L. Ed. 2d 344 (1977) (*ex post facto* prohibitions preclude enactment of laws that affect substantive criminal law); *O'Brien* (same). Thus, to read A.R.S. §§ 1-244 and 1-246 together in harmony, as we must, *see State v. Sweet*, 143 Ariz.

13

266, 270-71, 693 P.2d 921, 925-26 (1985), requires that we consider a prospective application of a statute that substantively affects a penalty to mean that the statute may only apply to persons whose offenses were committed after the enactment of the statute proscribing a new penalty. *O'Brien*, 204 Ariz. 459, ¶ 16, 65 P.3d at 111 ("both § 1-244 and § 1-246 compel us to conclude that the version of the statute in effect at the time petitioners committed their offenses determines the sanctions that may be imposed"). Applying that construction here, then, and assuming § 13-703.01(Q) is a substantive change in the sentencing statutes as they existed at the time Sanders committed the offenses, subsection (Q) may not apply to Sanders.[3] *Id*. ¶ 11 (a penalty statute is being retroactively applied if it "disturbed a vested, substantive right of petitioners by altering the legal consequences of their convictions as those consequences existed at the time"). However, if the change is merely procedural, then a prospective application means § 13-703.01(Q) applies from the date of enactment forward, that is, to proceedings such as Sanders's sentencing which are yet to take place.[4] Thus, we must

---

[3]In arguing that there is no retroactivity issue in this case, the state again contends that the law as it existed at the time Sanders committed the offense was, in fact, § 13-703.01(Q), rather than § 13-703 as interpreted by our supreme court in *Viramontes*. The state adds that, moreover, *Viramontes* had not been decided at the time Sanders committed the offense. For the reasons previously stated, the supreme court's interpretation of § 13-703 is the meaning we give to that statute, not a subsequently enacted statute purportedly clarifying the previous statute in a manner inconsistent with *Viramontes*. Thus, the law at the time of Sanders's offense was § 13-703 as the supreme court interpreted it in *Viramontes*.

[4]We note, as we did before, footnote 1, *supra*, that when the legislature amended the capital sentencing statutes in response to *Ring II*, it expressly provided that the changes would apply to any sentencing or resentencing after the effective date of the statutes. That it did not do so when it enacted § 13-703.01(Q) suggests it did not intend that the statute apply immediately to all sentencings after its effective date. We also note that the state does not dispute that § 13-703.01(Q) is substantive rather than procedural.

14

consider whether this change in the statute was substantive or procedural. Again, we find guidance in *San Carlos* and *Murray*.

¶22 In *San Carlos*, the court explained that a "merely procedural [statute] may be applied retroactively." 193 Ariz. 195, ¶ 15, 972 P.2d at 189. But it made clear that, once a right vests, it may not be disturbed by subsequent legislation. *Id.* *Murray* is even more instructive. There, the supreme court acknowledged that the legislature had intended the statutory amendments on parole eligibility to apply retroactively. However, the court held that the legislature "'may not disturb vested substantive rights by retroactively changing the law that applies to completed events . . . [and cannot] change the legal consequence of events completed before [a] statute's enactment.'" 194 Ariz. 373, ¶ 6, 982 P.2d at 1289, *quoting San Carlos*, 193 Ariz. 195, ¶ 15, 972 P.2d at 189. Adding that it is for the judiciary to decide whether the legal consequences of a change in the law are substantive or procedural, the court held that parole eligibility rights are substantive, not procedural. 194 Ariz. 373, ¶ 6, 982 P.2d at 1289; *see also San Carlos.*

¶23 Sanders is correct that a change in the aggravating factors a judge must consider is not procedural. It is a substantive change that affects the penalty. That conclusion is supported by our supreme court's decision in *State v. Ring*, 204 Ariz. 534, 65 P.3d 915 (2003) (*Ring III*). In *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002) (*Ring II* ), the United States Supreme Court found Arizona's capital sentencing statute unconstitutional based on principles it had announced in *Apprendi*. Because former § 13-703 permitted a judge to decide whether to sentence a person convicted of first-degree murder to

15

death, the Court held it violated the defendant's Sixth Amendment right to a jury trial. The legislature amended the statute after *Ring II* was decided. 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, § 3.

¶24 In *Ring III*, our supreme court held that resentencing defendants under the newly enacted sentencing statutes would not constitute an *ex post facto* violation under either the federal or state constitution. The court reasoned that the change in only the method of sentencing was procedural and could, therefore, as the legislature had expressly provided, apply to defendants who had committed offenses before the new statutes were enacted. *See* 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, § 7(A) (providing amendments to capital sentencing statutes applicable to sentencings or resentencings after August 1, 2002).

¶25 The court in *Ring III* observed that the change in the death penalty statute in Arizona was similar to the change in Florida's statute enacted in response to the United States Supreme Court's decision in *Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972). In *Furman*, the Supreme Court had held state death-sentencing procedures that lacked standards violated the Eighth Amendment's prohibition against cruel and unusual punishment. Later, in *Dobbert*, the Court rejected the defendant's claim that he could not constitutionally be sentenced under a new statute enacted in response to *Furman*. The Supreme Court found that "[t]he new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime." 432 U.S. at 293-94, 97 S. Ct. at 2298, 53 L. Ed. 2d at 356; *see also Schriro v. Summerlin*, ___ U.S. ___, 124 S. Ct. 2519, 159 L. Ed. 2d 442

16

(2004) (finding that right to jury sentencing in *Ring II* context is procedural right, not substantive); *State v. Towery*, 204 Ariz. 386, 64 P.3d 828 (2003) (same).

¶26        Significantly, the court in *Ring III* distinguished its decision in *State v. Correll*, 148 Ariz. 468, 715 P.2d 721 (1986). In *Correll*, the supreme court had held that the legislature's addition of an aggravating circumstance to the capital sentencing statute (committing one or more other homicides during the commission of the offense) was a substantive change in the law that disadvantaged the defendant to whom it had been applied. The court found that retroactive application of the new provision to a defendant who had committed offenses before the effective date of the statute violated the *ex post facto* prohibitions of the federal and state constitutions. In *Ring III*, the court noted that the change in the statute in *Correll* had "affected the substantive nature of the crime and sentencing" by adding a new factor that permitted the defendant to receive a more severe punishment than that available at the time of the offense. 204 Ariz. 534, ¶ 22, 65 P.3d at 928.

¶27        The enactment of § 13-703.01(Q) is analogous to the addition of an aggravating factor to § 13-703 at issue in *Correll*. It is qualitatively different from the changes in the capital sentencing statutes that the supreme court in *Ring III* characterized as procedural. Indeed, the kinds of aggravating factors that may be considered can significantly affect the sentence imposed, as the supreme court itself recognized in *Viramontes*. We conclude the change that § 13-703.01(Q) effected was substantive and that it must therefore apply prospectively only, that is, to defendants who committed offenses after the statute's effective date. Accordingly, Sanders must be sentenced in accordance with § 13-703 as it read in

17

July 2000, when he committed the offenses. And, consistent with *Viramontes*, the respondent judge must consider the aggravating factors in § 13-703, not those in § 13-702. In this case, we limit those factors to the ones of which the state gave notice because the state has failed to establish the respondent judge abused his discretion or lacked authority to so limit them. *See* Ariz. R. P. Spec. Actions 3(b), (c). We now turn to the question whether the Supreme Court's decision in *Blakely* requires that a jury find the aggravating circumstances beyond a reasonable doubt.

## DOES *BLAKELY* APPLY TO THE DECISION TO IMPOSE A NATURAL LIFE PRISON TERM OR LIFE WITH THE POSSIBILITY OF PAROLE?

¶28      In *Blakely*, the Supreme Court found Washington's non-capital sentencing statute violated the Sixth Amendment right to a jury trial based on the principle the Court had announced in *Apprendi*, that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely*, ___ U.S. at ___, 124 S. Ct. at 2536, ___ L. Ed. 2d at ___, *quoting Apprendi*, 530 U.S. at 490, 120 S. Ct. at 2362-63, 147 L. Ed. 2d at 455. The defendant in *Blakely* had pled guilty to a crime classified as a "class B felony," punishable under one provision of the Washington sentencing statutes by a maximum of ten years' imprisonment. But a different provision set a sentencing range for that crime of forty-nine to fifty-three months, permitting judges to sentence defendants beyond that range if the judge found "'substantial and compelling reasons justifying an exceptional sentence'" and limiting the facts the judge could consider in imposing the "'exceptional'" term to facts "'other

18

than those which are used in computing the standard range sentence for the offense.'" ___ U.S. at ___, 124 S. Ct. at 2535, ___ L. Ed. 2d at ___.  The Supreme Court held:

> [T]he 'statutory maximum' [of a sentencing statute] for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. . . .   In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.

*Id*. at ___, 124 S. Ct. at 2537, ___ L. Ed. 2d at ___ (emphasis deleted).  The Court concluded that, by imposing the exceptional term based on its findings, the trial court had violated the defendant's Sixth Amendment right to a jury trial.

¶29        Assuming for purposes of this decision that *Blakely* applies generally to Arizona's non-capital sentencing statutes, as the state essentially concedes, we hold that *Blakely* does not apply to a trial court's decision whether to sentence a defendant convicted of first-degree murder to a term of natural life imprisonment or life with the possibility of parole.  As discussed below, both options are indeterminate sentencing alternatives in § 13-703(A), variations, as it were, on a life term of imprisonment.  Either alternative may be imposed based solely on the jury's guilty verdict, without additional findings.

¶30        Neither the statute nor case law requires a sentencing judge to enter factual findings on the aggravating or mitigating factors in this context.  *Compare* § 13-703 (containing no language requiring findings of fact on circumstances judge considers in imposing prison term of natural life or life with the possibility of parole) *with* § 13-702(B) (requiring factual findings on aggravating or mitigating factors); *see State v. Harrison*, 195

19

Ariz. 1, 985 P.2d 486 (1999) (sentencing court's failure to substantially comply with requirement of fact-findings in § 13-702(B) was structural error not subject to harmless error analysis). And, we find both unsupported and unpersuasive Sanders's suggestion that a life term of imprisonment with the possibility of parole is the "presumptive" prison term in this context or the "statutory maximum" for purposes of *Blakely* and that a natural life term is tantamount to an aggravated, upward adjustment from that presumptive term.

**¶31**     As previously noted, at the time Sanders committed the offense, § 13-1105(C) provided that "[f]irst degree murder is a class 1 felony and is punishable by death or life imprisonment as provided by section 13-703." 2000 Ariz. Sess. Laws, ch. 50, § 2. The legislature added the natural life alternative to § 13-703 in 1993. 1993 Ariz. Sess. Laws, ch. 153, § 1. At the time Sanders committed the offense, § 13-703(A) provided:

> A person guilty of first degree murder as defined in section 13-1105 shall suffer death or imprisonment in the custody of the state department of corrections for life as determined and in accordance with the procedures provided in subsections B through G of this section. If the court imposes a life sentence, the court may order that the defendant not be released on any basis for the remainder of the defendant's natural life. An order sentencing the defendant to natural life is not subject to commutation or parole, work furlough or work release. If the court does not sentence the defendant to natural life, the defendant shall not be released on any basis until the completion of the service of twenty-five calendar years if the victim was fifteen or more years of age and thirty-five years if the victim was under fifteen years of age.

1999 Ariz. Sess. Laws, ch. 104, § 1.

¶32 In 2002, in response to *Ring II*, the legislature amended §§ 13-703 and 13-703.02 and added § 13-703.01, without subsection (Q). 2002 Ariz. Sess. Laws 5th Spec. Sess., ch. 1, § 7. But those provisions, which the legislature expressly made applicable to all sentencings and resentencings conducted after August 1, 2002, the effective date of the statute, relate to the death penalty, not the life imprisonment term. 2002 Ariz. Sess. Laws 5th Spec. Sess., ch. 1, §§ 3, 7(A).

¶33 In interpreting a statute, we must attempt to give effect to the legislature's intent, looking first to its most reliable index, the text of the statute. *Zamora v. Reinstein*, 185 Ariz. 272, 915 P.2d 1227 (1996); *see also Abbott v. City of Tempe*, 129 Ariz. 273, 630 P.2d 569 (App. 1981) (cardinal rule in statutory interpretation is to ascertain and give effect to legislature's intent). "'[W]hen the language [of a statute] is clear and unequivocal, it is determinative of the statute's construction.'" *Viramontes*, 204 Ariz. 360, ¶ 8, 64 P.3d at 189, *quoting Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991); *see also Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 872 P.2d 668 (1994) (when text of statute is clear and unambiguous, courts need not employ other methods of statutory interpretation to determine legislative intent because that intent can be determined from face of statute).

¶34 As discussed earlier, in *Viramontes*, our supreme court found § 13-703(A) clearly and unambiguously required trial judges to consider the aggravating factors listed in § 13-703 rather than those in § 13-702 in choosing between a prison term of natural life or life with the possibility of parole. We conclude the statute is equally clear that the legislature intended to provide one sentencing option for persons convicted of first-degree murder other

21

than death: a life term of imprisonment. The legislature gave trial judges the discretion to choose alternative conditions for that life term—natural life or life with the possibility of parole in twenty-five or thirty-five years—but neither alternative may be characterized as the presumptive term, and both may be imposed "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant . . . without any additional findings." *Blakely*, ___ U.S. at ___, 124 S. Ct. at 2537, ___ L. Ed. 2d at ___ (emphasis deleted).

¶35        The notion of a "presumptive" prison term derives from language in A.R.S. §§ 13-701 through 13-702.02; it is considered the sentence that should apply in most cases. *See State v. Thurlow*, 148 Ariz. 16, 19-20, 712 P.2d 929, 932-33 (1986) (presumptive term applies to the "vast majority of first offenders"). It is also the starting point from which the length of prison terms may depart, depending on aggravating and mitigating circumstances listed in §§ 13-702 and 13-702.01. For purposes of *Blakely*, the presumptive term is "the 'statutory maximum' . . . sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant . . . without any additional findings." ___ U.S. at ___, 124 S. Ct. at 2537, ___ L. Ed. 2d at ___ (emphasis deleted). But nothing in the sentencing provisions for first-degree murder, particularly at the time Sanders committed the offense, expressly states or even suggests that the legislature regarded either a life prison term with the possibility of parole or a natural life term to be appropriate for the "vast majority of first offend[ing]" defendants convicted of first-degree murder and not sentenced to death. *Thurlow*, 148 Ariz. at 19-20, 712 P.2d at 932-33.

¶36         In *State v. Ovind*, 186 Ariz. 475, 478, 924 P.2d 479, 482 (App. 1996), Division

One of this court acknowledged that, "[u]nlike the sentences for other crimes, the statute

relating to first degree murder does not describe any sentence as the 'presumptive' one."

Nevertheless, the court found that a prison term of life with the possibility of parole is

tantamount to the presumptive prison term under § 13-703.  But the court was constrained to

find one of the two prison options to be the presumptive term because the defendant had been

found guilty but insane pursuant to A.R.S. § 13-502; consequently, the trial court had been

required to commit the defendant to a secure mental health facility for the "presumptive" term

for the offense pursuant to A.R.S. § 13-3994.  Division One concluded, in that context, that

§ 13-703 was "ambiguous, probably the result of an oversight in drafting." *Ovind*, 186 Ariz.

at 478, 924 P.2d at 482.  But, the court added, this did not require that the commitment order

be vacated.  As the court stated, "[i]nstead, we apply the rule of lenity and impose the least

onerous commitment to which the statute exposes the Defendant." *Id*.

¶37         In contrast, here we have no reason to apply the rule of lenity because our

supreme court stated in *Viramontes* that § 13-703 is clear and no conflicting statute creates

an ambiguity.  *See State v. Fell*, 203 Ariz. 186, ¶ 10, 52 P.3d 218, 221 (App. 2002) ("Th[e]

rule of [lenity] applies when a statute is ambiguous and dictates that any doubt about statutory

construction be resolved in favor of a defendant.").  Moreover, *Ovind* was decided well before

*Apprendi*, *Blakely*, and *Viramontes*.  Therefore, the court in that case was not asked to decide

whether a prison term of natural life or life with the possibility of parole was the maximum

sentence authorized by the jury's verdict.  Finally, we note that the court in *Ovind* found that,

"under the sentencing statute for first degree murder, the sentence that the court will presumably apply unless it finds a reason to do otherwise is twenty-five years without commutation or parole." 186 Ariz. at 478, 924 P.2d at 482. The court cited no authority for that proposition, however, nor are we aware of any. It is not a fact of which this court may take judicial notice. *See* Ariz. R. Evid. 201, 17A A.R.S. We therefore find *Ovind* distinguishable and do not follow it.

¶38 Our conclusion is supported not only by the clear language of the first-degree murder sentencing statutes, a comparison of the sentencing statutes pertaining to offenses other than first-degree murder, and our reading of *Blakely*, but also by our supreme court's decision in *State v. Wagner*, 194 Ariz. 310, 982 P.2d 270 (1999). There, the court rejected the defendant's claim that § 13-703(A) was unconstitutionally vague and violated his due process and equal protection rights because it did not contain guidelines for sentencing judges choosing between a natural life prison term or life with the possibility of parole. The supreme court agreed with Division One of this court that the statute did not violate these constitutional provisions. *Id*.

¶39 The supreme court's acknowledgment in *Wagner* that the statute provided no specific guidelines recognized, at least implicitly, that no findings were required. The court reasoned that, "[b]ecause appellant has no constitutional right to sentencing guidelines in a non-capital proceeding, the lack of guidelines for imposing a sentence of life or natural life does not violate appellant's right to due process or equal protection under the law." *Id*. Like Division One, the supreme court relied, in part, on the United States Supreme Court's decision

24

in *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991). There, the Court had rejected the claim that the Constitution required states "to create a sentencing scheme whereby life in prison without possibility of parole is simply the most severe of a range of available penalties that the sentencer may impose after hearing evidence in mitigation and aggravation." *Id*. at 994, 111 S. Ct. at 2701, 115 L. Ed. 2d at 864. Our supreme court in *Wagner* also relied on *United States v. LaFleur*, 971 F.2d 200 (9th Cir. 1991), in which the Ninth Circuit Court of Appeals held that the Constitution does not require a sentencing court to conduct an individual assessment in determining whether a life prison term is appropriate.

¶40 We find further support for the conclusion that either a natural life term or a life term with the possibility of parole is authorized by the jury verdict in those portions of our supreme court's decision in *State v. Ring*, 200 Ariz. 267, 25 P.3d 1139 (2001) (*Ring I*), that the United States Supreme Court cited with approval in *Ring II*. In *Ring I*, our supreme court characterized the first-degree murder sentencing statute as it read at all times relevant to Sanders's case as follows:

> In Arizona, a defendant cannot be put to death solely on the basis of a jury's verdict, regardless of the jury's factual findings. The range of punishment allowed by law on the basis of the verdict alone is life imprisonment with the possibility of parole or imprisonment for 'natural life' without the possibility of release.

200 Ariz. 267, ¶ 42, 25 P.3d at 1151. And the Supreme Court similarly characterized Arizona's capital sentencing statute as follows: "Based solely on the jury's verdict finding Ring guilty of first-degree felony murder, the maximum punishment he could have received

25

was life imprisonment." 536 U.S. at 597, 122 S. Ct. at 2437, 153 L. Ed. 2d at 569. Neither the United States Supreme Court nor the Arizona Supreme Court distinguished a natural life term from a term of life with the possibility of parole; both courts regarded the prison term authorized by the jury verdict alone as a life term of imprisonment. Both forms of a life term, then, are authorized by the verdict. To sentence a defendant to death under former § 13-703, of course, required a sentencing judge to find aggravating circumstances beyond a reasonable doubt.

¶41        Nothing in *Viramontes* requires trial judges to make factual findings before choosing between a natural life term of imprisonment or life with the possibility of parole. Moreover, such a requirement would be inconsistent with *Wagner*. Athough the *Viramontes* court noted in dictum that it was not required to follow the court of appeals' decisions in *State v. Guytan*, 192 Ariz. 514, 968 P.2d 587 (App. 1998), and *State v. Sproule*, 188 Ariz. 439, 937 P.2d 361 (App. 1996), it did not overrule them. Rather, it distinguished those cases. Thus, they remain good law. And as the court stated in *Guytan*, relying on *Sproule*, 188 Ariz. at 440, 937 P.2d at 362, "the trial court ha[s] no obligation to articulate the factors it consider[s] in choosing to impose a natural-life sentence." 192 Ariz. 514, ¶ 42, 968 P.2d at 597.[5]

---

[5]At oral argument, Sanders contended § 13-703 implicitly requires a court to make factual findings. And, he claimed that principles of due process require that such findings be made because, without them, there is no way to meaningfully review for an abuse of discretion a trial court's decision to impose a natural life term rather than life with the possibility of parole. These arguments are not without merit. But the legislature did not require express findings. Indeed, it did not require them when it enacted § 13-703.01(Q). Had it wanted to, it could have done so, as it did in § 13-702(B), which applies to crimes other than first-degree murder and provides that an aggravated prison term may not be imposed unless "the circumstances alleged to be in aggravation . . . are found to be true by the trial judge . . . and

26

**CONCLUSION**

¶42        We conclude that a trial judge need not make any additional findings in deciding whether to impose a natural life prison term or life with the possibility of parole. Thus, *Blakely* does not apply, and Sanders is not entitled to a jury trial on the aggravating factors. But, even if the statute could be construed, implicitly or otherwise, as requiring a judge to make express factual findings and assuming, too, that, in light of *Viramontes*, we must question the continued viability of *Sproule* and *Guytan*, we would nevertheless reach the same conclusion.

¶43        Once the jury found Sanders guilty of first-degree murder, the respondent judge may impose any term within the range authorized by the verdict. As we have said, that is a life term of imprisonment, which the respondent judge, in the exercise of his discretion, may order Sanders to serve in its entirety or with the possibility of parole after twenty-five years. The respondent judge may base that decision "on various facts relating to the defendant and the manner in which the offense was committed." *Harris v. United States*, 536 U.S. 545, 549,

_____

factual findings and reasons in support of such findings are set forth on the record at the time of sentencing." *See State v. Harrison*, 195 Ariz. 1, 985 P.2d 486 (1999). As troubling as the absence of such a requirement might be, Sanders has not persuaded us that his due process rights will be violated if the respondent judge imposes a natural life term without making such findings, and indeed, the case law is to the contrary. *See Wagner; Guytan; Sproule*. It is for the legislature, not the judiciary, to impose such a requirement, and we may not engraft onto the statute provisions that do not exist. *Cf. Tornabene v. Bonine ex rel. Ariz. Highway Dep't*, 203 Ariz. 326, ¶ 20, 54 P.3d 355, 363 (App. 2002) (courts may "judicially engraft" a requirement into a statute "only if the Constitution compels" it).

122 S. Ct. 2406, 2410, 153 L. Ed. 2d 524, 533 (2002) (plurality opinion finding *Apprendi* is not implicated if court-found sentencing factor raises mandatory minimum penalty). The Court in *Harris* stated, "Though these facts may have a substantial impact on the sentence, they are not elements [of the offense] and are thus not subject to the Constitution's indictment, jury, and proof requirements." *Id*. "Judicial factfinding in the course of selecting a sentence within the authorized range does not implicate the indictment, jury-trial, and reasonable-doubt components of the Fifth and Sixth Amendments." *Id*. at 558, 122 S. Ct. at 2415, 153 L. Ed. 2d at 538. Because there is no presumptive or aggravated prison term for first-degree murder, *Blakely* is not implicated. This would be true even if the statute required, implicitly or otherwise, trial courts to make express findings of fact.

**DISPOSITION**

¶44    For the reasons stated above, we accept jurisdiction of this special action. Because we find that the respondent judge "has proceeded or is threatening to proceed without or in excess of [his] jurisdiction or legal authority," Rule 3(b), Ariz. R. P. Spec. Actions, by compelling the state to prove and a jury to find beyond a reasonable doubt the aggravating factors alleged in the state's notice, we vacate those portions of the court's July 20 and August 2 orders. The respondent judge is directed to conduct sentencing proceedings consistent with this opinion and our supreme court's decision in *Viramontes*. We find, however, that the respondent judge did not err or abuse his discretion in finding, at least implicitly, that § 13-703.01 is not retroactively applicable to Sanders's sentencing proceeding. Nor can we say the respondent judge abused his discretion in limiting the aggravating factors to those of

28

which the state has given notice.  We therefore deny the state's request for relief on those grounds.

_____
PHILIP G. ESPINOSA, Judge

CONCURRING:


_____
JOHN PELANDER, Chief Judge



_____
M. JAN FLÓREZ, Presiding Judge