968 P.2d 587

STATE of Arizona, Appellee,

v.

Gerardo GUYTAN, Appellant.

No. 1 CA–CR 96–0746.

Court of Appeals of Arizona, Division 1, Department D.

April 7, 1998.

Review Denied Dec. 7, 1998.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, R. Wayne Ford, Assistant Attorney General, Phoenix, for Appellee.

Christopher Johns, Phoenix, for Appellant.

## OPINION

EHRLICH, Judge.

¶ 1 Gerardo Guytan ("defendant") appeals, raising issues regarding the substitution of an alternate juror during jury deliberations and the constitutionality of a prison sentence of "natural life" for first-degree murder. We discuss the procedure for the substitution of a juror during deliberations, and we affirm the convictions for murder, two aggravated assaults and a drive-by shooting, and the sentence of the defendant to a term of natural life. We modify the other three sentences for terms of fixed years.

*FACTS AND PROCEDURAL HISTORY*[1]

■ ¶ 2   In the early morning of August 20, 1995, the defendant, a member of the Wetback Power 21st Street Gang, and four fellow gang members encountered three members of the Wetback Power 8th Street Gang. The defendant and his friends were in a Hyundai car; the other three persons were walking. Words had been exchanged and gang signs "flashed" when the defendant fired several gunshots from the car, wounding two of the 8th Street Gang members and killing the third member. The defendant was charged with first-degree murder, drive-by shooting and two counts of aggravated assault.

¶ 3   When jury selection was completed, trial recessed for twelve days. During that time, the prosecutor first filed an allegation that the offenses were committed to promote, further or assist criminal conduct by a criminal street gang. ARIZ.REV.STAT. ANN. ("A.R.S.") § 13–604(T).

¶ 4   After presentation of the case was concluded, three alternate jurors were selected by lot, and the remaining jurors retired for deliberations. No more than thirty minutes later, at approximately 5:00 p.m., the jury was excused for the day. The next morning, one juror failed to appear. That afternoon, it was decided upon counsel's stipulation that the first alternate juror would be substituted for the missing juror.

¶ 5   Immediately before the substitution of the alternate juror, the following colloquy among the trial court and counsel occurred:

> The Court: [A juror] did not show up. It's now 1:30 and the court discussed with counsel a viable alternative, another juror....
>
> * * *
>
> The Court: ... Based upon the court's suggestion yesterday that all discharged jurors were [sic] alternate jurors would call the court to find out what the decision of their fellow jurors was, she called at approximately 11:30 and the court conferred with counsel and everyone agreed

to her being the 12th juror and to discharging [the other juror] who has not yet showed up.

> She has indicated her willingness to do so. I indicated yesterday that she was not to discuss the case with anyone. It's my understanding that she has not discussed the case with anyone and that I plan to reconvene the jury in the courtroom, go over with them the situation, and have them begin their deliberations anew with the inclusion of [the alternate juror].
>
> I'm also going to submit a new revised copy of the page after the murder page that we discussed in which I had the jury write in the first line. Okay.
>
> [The Prosecutor]: Correct.
>
> The Court: Anything further, counsel?
>
> [Defense counsel]: I don't believe so.
>
> [Defense counsel]: Your honor, just to make the record abundantly clear, we don't object to you bringing back [the alternate juror] for the reason that she was kept under the admonition yesterday when she was released.
>
> It was approximately 4:45 when she was released. The jury has done minimal deliberations at this point and as long as they're being told to begin their deliberations anew we do not object to that.
>
> * * *
>
> [Prosecutor]: I believe the defendant has waived his presence for what's going on here in chambers right now.
>
> [Defense counsel]: Yes.
>
> The Court: Very good, gentlemen. Thank you very much. One other thing. I want the record to reflect, with your authorization, I did go in and speak to the 11 jurors and I did explain to them the particular situation and that we're going to bring in [the alternate juror]. I told them to not have this in any way impact upon their decision making abilities and they said they would abide by that. Okay.

¶ 6   The trial court then reconvened in the presence of the eleven original jurors and the alternate juror. It explained the reason for

---

**1.**   We view the facts in the light most favorable to sustaining the verdicts, resolving all reasonable inferences against the defendant. *State v. At-* *wood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

the substitution, and it confirmed that the alternate juror had not discussed the case with anyone. The court told the jurors that it wanted each of them to actively participate and to return a verdict that would represent individual thinking expressed collectively. Finally, the court advised the jurors to give the matter their full attention and not to be concerned about time constraints. When it asked counsel whether they had any further requests, defense counsel asked the court to inform the jurors that they could deliberate as long as they wanted that day, but he made no other request or objection to the instructions.

¶ 7    The reconstituted jury deliberated for approximately five hours before finding the defendant guilty as charged. It also found the offenses to be dangerous and committed to promote, further or assist criminal conduct by a gang.

¶ 8    The trial court sentenced the defendant to serve the remainder of his life in prison as punishment for the murder. It also imposed on the defendant two consecutive 18–year prison sentences for the assaults and a consecutive term of 24 years for the drive-by shooting. Because of the finding of gang motivation, each of the sentences imposing a fixed number of years reflected a three-year increase from the sentence the court otherwise would have given. A.R.S. § 13–604(T).

¶ 9    The defendant appealed, raising the following issues:

1.    Whether the trial court erred in substituting an alternate juror after deliberations had begun;

2.    Whether the court committed fundamental error by failing to instruct the reconstituted jury to begin its deliberations anew;

3.    Whether the court erred in allowing the prosecutor to seek sentencing enhancement pursuant to A.R.S. section 13–604(T) although he failed to disclose his intent to do so until after the jury had been impaneled;

4.    Whether the imposition of a natural-life sentence is unconstitutional because it

is subject to arbitrary and capricious application;

5.    Whether the court acted arbitrarily or capriciously in sentencing the defendant to natural life.

## DISCUSSION

### 1.    Substitution of the Alternate Juror

¶ 10    The defendant raises several claims of error involving the substitution of an alternate juror for the juror who failed to appear. We have found no Arizona opinion addressing the methodology of substituting a juror after deliberations have begun.

¶ 11    Potential problems are inherent when a juror leaves deliberations and another person is called to join the process.

> Where an alternate juror is inserted into a deliberative process in which some jurors may have formed opinions regarding the defendant's guilt or innocence, there is a real danger that the new juror will not have a realistic opportunity to express his views and to persuade others. Moreover, the new juror will not have been part of the dynamics of the prior deliberations, including the interplay of influences among and between jurors, that advanced the other jurors along their paths to a decision. Nor will the new juror have had the benefit of the unavailable juror's views. Finally, a lone juror who cannot in good conscience vote for conviction might be under great pressure to feign illness in order to place the burden of decision on an alternate.

*People v. Burnette*, 775 P.2d 583, 588 (Colo. 1989) (citations omitted); *see also State v. Bobo*, 814 S.W.2d 353, 357–58 (Tenn.1991); *State v. Lehman*, 108 Wis.2d 291, 321 N.W.2d 212, 220 (1982); *People v. Ford*, 145 Misc.2d 308, 546 N.Y.S.2d 313, 316–17 (1989).

¶ 12    These concerns have been addressed in a variety of ways. Several federal courts, for example, have upheld the substitution of a juror after the commencement of deliberations, provided that certain procedural safeguards are observed to guard against the threat of prejudice. *E.g., Claudio v. Snyder*, 68 F.3d 1573, 1575–77 (3d Cir.1995) (refusing relief despite trial court's failure to specifical-

ly instruct jury to begin deliberations anew when instruction court gave was "functional equivalent" of such instruction and when substitute juror instructed to be thoroughly familiar with evidence and views of other jurors before proceeding), *cert. denied,* 517 U.S. 1109, 116 S.Ct. 1329, 134 L.Ed.2d 480 (1996); *United States v. Guevara,* 823 F.2d 446, 448 (11th Cir.1987) (no reversible error in juror-substitution procedure when original jury deliberated for only short period before discovery that juror was disabled and when court took following "extraordinary precautions": questioned alternate juror as to whether he had discussed case with anyone or had been exposed to any extrinsic information concerning case; questioned each remaining juror as to whether he would be able to begin deliberations anew; ordered confiscation of all juror notes taken during deliberations and recharged new jury); *Miller v. Stagner,* 757 F.2d 988, 995 (substitution of two alternate jurors did not violate defendants' constitutional rights because trial court's instruction to jury to disregard earlier deliberations and to begin deliberations anew preserved essential feature of the jury), *amended on other grounds,* 768 F.2d 1090 (9th Cir.1985), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1269, 89 L.Ed.2d 577 (1986); *United States v. Phillips,* 664 F.2d 971, 990–96 (5th Cir.1981) ("in the context of a most complex and protracted trial," substitution did not warrant reversal even though defendant objected and substitution violated federal rule of procedure requiring discharge of alternates before deliberations when trial court took following "extreme precautions": sequestered alternate juror during preliminary jury deliberations; individually questioned each juror about whether he could start anew; and instructed jury on duty to start deliberations anew), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982).

¶ 13   The appellate courts of other states have addressed the issue in a similar fashion. *See State v. Williams,* 231 Conn. 235, 645 A.2d 999, 1004–05 (1994); *Burnette,* 775 P.2d at 586–91; *People v. Dry Land Marina,* 175 Mich.App. 322, 437 N.W.2d 391, 392–95 (1989), *cert. denied,* 495 U.S. 931, 110 S.Ct. 2170, 109 L.Ed.2d 499 (1990). In Colorado, for example, the supreme court held that substitution after deliberations begin gives rise to a rebuttable presumption of prejudice, a presumption overcome only if the trial court takes extraordinary precautions to safeguard against prejudice. *Burnette,* 775 P.2d at 590. Such precautions may include confirmation that the alternate was not tainted, that the jurors can disregard their prior deliberations and that the reconstituted jury begin its deliberations anew. *See id.* at 590–91;[2] *see also People v. Collins,* 17 Cal.3d 687, 131 Cal.Rptr. 782, 786–87, 552 P.2d 742, 746–47 (1976) (interpreting statute to require that jury be instructed to begin deliberations anew), *cert. denied,* 429 U.S. 1077, 97 S.Ct. 820, 50 L.Ed.2d 796 (1977).

¶ 14   The defendant claims in his opening brief on appeal that there is no Arizona authority to allow the trial court to substitute a juror after deliberations begin. In his reply to the state's brief, though, he admits that, to the contrary, ARIZ. R.CRIM. P. ("Rule") 18.5(h) expressly provides for such substitution.[3]

**2.** The rule of criminal procedure at issue in *Burnette* provided in relevant part:

> (e) ... Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties.... An alternate juror who does not replace a regular juror shall be discharged at the time the jury retires to consider its verdict.

COLO. R.CRIM. P. 24(e) (1990). Following the decision in *Burnette,* the rule was amended by deleting the language "prior to the time the jury retires to consider its verdict." COLO. R.CRIM. P. 24(e) (Supp.1997).

The presumption of prejudice that arose in *Burnette* resulted from the replacement of a disabled juror with a discharged alternate juror. However, the corresponding rule in Arizona, ARIZ. R.CRIM. P. 18.5(h), permits the court to physically excuse the alternates before deliberations begin, but the court must instruct the alternates "to continue to observe the admonitions ... until they are informed that a verdict has been returned or the jury discharged."

**3.** Rule 18.5 states:

> **h.** **Selection of Jury.** The persons remaining in the jury box or on the list of the panel of prospective jurors shall constitute the jurors for trial. Just before the jury retires to begin

¶ 15 The defendant then insists that the rule, on its face, is unconstitutional because it violates the "separation of powers" provision of the Arizona Constitution. However, because he did not raise this issue before his reply brief, it is waived. *E.g., State v. Lee*, 160 Ariz. 489, 495, 774 P.2d 228, 234 (App.1989)(claim of error cannot be raised for first time in reply brief).

¶ 16 The defendant also contends that the substitution violated his right to a fair and impartial jury because the trial court failed to obtain a knowing waiver of his right to refuse substitution when his counsel stipulated to the substitution in his absence. We agree only in part.

¶ 17 It is not good practice for defense counsel to waive or for the trial court to allow defense counsel to waive the presence of the defendant without consultation with the defendant when issues of substance are before the court, especially if the jury is to be present. *See State v. Levato*, 186 Ariz. 441, 443, 924 P.2d 445, 447 (1996). The defendant has the right to confer with and direct counsel as to which course to follow. *See State v. Garcia–Contreras*, 191 Ariz. 144, 148–49, 953 P.2d 536, 540–41 (1998). However, reversal is not required. Defense counsel did waive his client's presence and, on appeal, suggests no alternative to the process the court followed. Further, Rule 18.5(h) allows the court to substitute a juror after deliberations have begun despite a defendant's objection.[4]

¶ 18 We likewise reject the defendant's claim that the trial court was required to personally inform him of his "right" to a

verdict from fewer than twelve jurors. While A.R.S. section 21–102(E) provides for such a verdict, the statute requires the consent of both parties, as well as approval by the court. The record is silent as to whether the issue was raised, let alone whether the court, the prosecutor or the defendant would have agreed to accept a verdict from fewer than twelve jurors.

¶ 19 Furthermore, while the defendant does have a right to a fair and impartial jury, he does not have a right to any particular jury. *State v. Davis*, 137 Ariz. 551, 558, 672 P.2d 480, 487 (App.1983). The alternate juror was a participant in the original voir dire. She heard all of the evidence and instructions. She was selected as an alternate by lot in accordance with Rule 18.5(h). She had been the first juror chosen as an alternate, and, again according to Rule 18.5(h), substitute jurors are selected from among the alternates in the order previously designated. As required by the rule, she had been instructed not to discuss the case, and she indicated on the record that she had followed the admonition.

¶ 20 The defendant finds some mischievous meaning in the fact that the substitute juror had contacted the trial court during the morning when the missing juror failed to appear. However, the alternate could not have known then that a substitute would be needed; she called to learn whether a verdict had been rendered as had been suggested by the court itself when the alternate and excused jurors were discharged the day before. Nothing suggests any more than a coincidental connection between a contact made from

---

deliberations, the clerk shall, by lot, determine the juror or jurors to be designated as alternates. The alternate, or alternates, upon being physically excused by the court, shall be instructed to continue to observe the admonitions to jurors until they are informed that a verdict has been returned or the jury discharged. In the event a deliberating juror is excused due to inability or disqualification to perform required duties, the court may substitute an alternate juror, choosing from among the alternates in the order previously designated, unless disqualified, to join in the deliberations. If an alternate joins the deliberations, the jury shall be instructed to begin deliberations anew.

4. We also note that the presence of the defendant when a juror is being substituted is subject to a harmless-error analysis. *E.g., Miller v. Stagner*, 757 F.2d 988 (harmless error for defendants to have been excluded from in-chambers hearing resulting in dismissal of juror and substitution of alternate juror); *Henderson v. Lane*, 613 F.2d 175 (7th Cir.) (harmless error for defendant to not be present while alternate juror substituted when defendant present during original voir dire to observe the empaneling of alternate jurors, when defense counsel had opportunity to question alternates, when defense counsel present during substitution proceedings and when proceedings transcribed), *cert. denied*, 446 U.S. 986, 100 S.Ct. 2971, 64 L.Ed.2d 844 (1980).

curiosity and the selection of this person as the substitute juror. There was compliance with the applicable portion of Rule 18.5(h). Defense counsel agreed to the substitution, and the defendant has not alleged that the alternate juror was biased. The court did not err in substituting the alternate juror for the juror who failed to appear.

### 2. Court's Instruction to the Reconstituted Jury

¶ 21 The defendant complains that the failure of the trial court to expressly instruct the jurors to begin their deliberations anew as required by Rule 18.5(h) constituted reversible error. He argues that the court's statement that it had told the eleven original jurors that the substitution was not to have an impact on their decision-making process may have misled them into thinking that they were to begin where they had ended the day before, thus creating the risk of a less-than-unanimous verdict.

¶ 22 The requirement that jurors begin deliberations anew after a substitution guards against the potential problems that substitution poses. In particular, if deliberations have begun, some issues already may have been decided as a practical matter. In that case, there is an inherent risk that the resulting verdict as to those issues will reflect only the views of the original jurors, thereby depriving the defendant of his right to unanimity from the requisite number of jurors. *Burnette*, 775 P.2d at 588; *Collins*, 131 Cal.Rptr. at 786, 552 P.2d at 746.

¶ 23 Even in those jurisdictions lacking a statute or rule expressly requiring such an instruction, the courts have typically and wisely imposed such a requirement. *See Collins*, 131 Cal.Rptr. at 786–87, 552 P.2d at 746–47; *Dry Land Marina*, 437 N.W.2d at 394–95. Nevertheless, the failure to instruct the jury to begin deliberations anew, under certain circumstances, does not require reversal. *E.g., United States v. Evans*, 635

F.2d 1124, 1128 (4th Cir.1980) (failure to instruct jury to begin anew insufficient to justify reversal when jury only told to continue deliberations, when defendant failed to object to instruction and when defendant personally agreed to substitution with alternate juror), *cert. denied*, 452 U.S. 943, 101 S.Ct. 3090, 69 L.Ed.2d 958 (1981); *Collins*, 131 Cal.Rptr. at 789, 552 P.2d at 749 (failure to instruct jury to begin deliberations anew, in violation of state constitution, harmless in light of strong case against defendant).

¶ 24 In this case, the trial court's comments were ambiguous, and, unfortunately, it was summarizing a conversation with the eleven original jurors which took place off the record, although with defense counsel's acquiescence.[5] The jurors had been dismissed for the day approximately thirty minutes after they received the case for consideration, "minimal deliberations at this point" as defense counsel said. The court was aware of the requirement that deliberations begin anew, and defense counsel did not object to the instruction that was given once the reconstituted jury had assembled. Additionally, any risk of confusion was ameliorated by the court's reiteration that each of the jurors was to actively participate in deliberations and that each was to give the court and the parties the benefit of his or her "individual best thinking" to arrive at a collective verdict. The reconstituted jury then deliberated for five hours before reaching its verdict. This was adequate, if not desirable, upon the circumstances of this case.

¶ 25 The defendant also argues that the trial court erred in failing to obtain a personal waiver of his presence when the reconstituted jury was "reinstructed." He cites Rule 19.2, which provides that a defendant has a right to be present during the giving of additional jury instructions. He contends that his counsel's representation to the court of his waiver was insufficient.

---

**5.** The trial judge should not communicate with the jury outside the presence of counsel about any concern other than a "housekeeping" matter. *See State v. Tovar*, 187 Ariz. 391, 394–95, 930 P.2d 468, 471–72 (App.1996); *State v. Hilliard*, 133 Ariz. 364, 368–69, 651 P.2d 892, 896–97 (App.1982). While elements of the contact in this case were "housekeeping" in the sense that the jury needed an explanation for the delay that was occurring, the situation was one which could have drawn the judge into a substantive discussion of the effect of the substitution of the alternate juror on deliberations.

¶ 26  A defendant has a constitutional right to be present at every stage of trial when his presence has a reasonably substantial relation to the right to defend himself. *E.g., Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987); *Levato,* 186 Ariz. at 443, 924 P.2d at 447; *see State v. McCrimmon,* 187 Ariz. 169, 171, 927 P.2d 1298, 1300 (1996). As we said above, it is sound procedure that the defendant's presence not be waived in the absence of consultation with counsel when issues of substance are before the trial court and particularly if the jury is to be present. *See Levato,* 186 Ariz. at 443, 924 P.2d at 447. The right, however, to be present in this situation is not of such nature that it cannot be waived by counsel.

¶ 27  In *State v. Collins,* 133 Ariz. 20, 23, 648 P.2d 135, 138 (App.1982), this court held that defense counsel could waive a defendant's right to be present at the exercise of peremptory strikes of prospective jurors, and that the trial court could accept such a waiver without obtaining a personal declaration from the defendant. Criminal defendants have been bound by counsel's waiver of other rights as well. *E.g., Levato,* 186 Ariz. at 444, 924 P.2d at 448. In this case, the "additional instructions" consisted merely of a reiteration of instructions relating to the jurors' obligations to give the case careful consideration and to participate fully in deliberations. We reject the defendant's contention that his presence at such "reinstruction" was more critical than his presence at the return of a verdict or the polling of jurors. *See id.* at 445, 924 P.2d at 449. The defendant was bound by counsel's waiver.

### 3. Gang-enhancement Allegation

¶ 28  The defendant contends that the trial court erred in allowing the prosecutor to allege gang motivation for the purpose of sentence enhancement after trial had begun. He claims that, had the prosecutor given notice of his intent to seek enhancement before the jury was chosen, he would have employed a different strategy during jury selection and exercised his peremptory strikes differently.

¶ 29  Various subsections of A.R.S. section 13–604 afford sentence enhancement when certain aggravating circumstances have been alleged and proven. Subsection T provides that, if an offense was committed with the intent to promote, further or assist criminal conduct by a criminal street gang, the prison term for the offense "shall be increased by three years."

¶ 30  Section 13–604(P) sets forth time limitations for the filing of other allegations under section 13–604, but it contains no mention of allegations of gang motivation. Whatever the reason for the exclusion, though, and although the trial court concluded that the allegation was timely under section 13–604(P), we need not decide whether section 13–604(P) applies because the prosecutor's request to amend the indictment, filed more than one week after the trial had begun, was untimely under Rule 16.1(b).

¶ 31  Rule 16.1(b) requires that motions be made no later than 20 days prior to trial, defined as the date the case is actually tried. *Committee Comment to 1993 Amendments to Rule 16.* Rule 16.1(c) provides that untimely motions or requests "shall" be precluded, unless the basis for the request was not known and, by the exercise of reasonable diligence, could not have been known.

¶ 32  The prosecutor did not file the request to amend the indictment to include the sentence-enhancement allegation until nine days after the jury was impaneled. In analyzing the words "actually tried" as used in A.R.S. section 13–604(P), the trial court interpreted the rule to mean "up until the return of a verdict,"[6] but the requirement that sentence-enhancement allegations be filed prior to trial is intended to ensure that a defendant has sufficient notice of the full extent of potential punishment before his trial begins. *State v. Rodgers,* 134 Ariz. 296, 306–07, 655 P.2d 1348, 1358–59 (App.1982). Fundamental fairness thus requires that a

---

6. This ruling was made despite the fact that section 13–604(P) allows enhancement allegations to be made at any time but prior to the date the case is actually tried, unless the allegation is filed fewer than 20 days before the case is tried and the court finds on the record that the defendant suffered prejudice due to the late filing.

request to amend an indictment to seek sentence enhancement under section 13–604(T) must be made before the jury is sworn.

¶ 33   In response to defense counsel's objection to the belated allegation of sentence enhancement, the prosecutor merely argued:

> [Defense counsel] and I, we had talked, we had several discussions as to whether this offense was a gang motivated offense. It wasn't until we actually completed our interview [after jury selection] of Sergeant Ferrero that both of us understood that this was in fact a gang motivated offense, and I went and filed the allegation the next day after we did the interview.

¶ 34   We find unlikely the prosecutor's contention that he was unable to discover sufficient evidence of gang motivation until after he had interviewed a police sergeant after the jury had been sworn. This case involved drive-by shootings committed by a member of one gang, in the presence of fellow gang members, against members of another gang. The indictment had been pending for more than nine months. We find more credible the prosecutor's later response to the defendant's objection: "With regards to any type of jury concern with regards to the gang, we certainly knew that there were gang overtones to the case...." The untimely filing was not justified.

¶ 35   For the same reason, however, we reject the defendant's contention that the error requires reversal of his convictions. The gang-related nature of the case was apparent from the indictment and discovery. Three weeks before jury selection began, the defendant submitted a proposed juror questionnaire. In addition to questions regarding prospective jurors' opinions regarding gangs, he proposed that the trial court inform the jury pool:

> Finally, both the State and the defendant will present evidence that Mr. Guytan, and all four of the people in the gray Hyundai, when it was stopped, were associated with the Wetback Power 21st Street Gang. There will also be evidence that the victims had some association with the 8th Street Wetback Power Gang. These two gangs are rival street gangs here in Phoenix.

¶ 36   That the case was one involving gang activity was also clear during voir dire. The trial court inquired of prospective jurors whether they could be fair and impartial given the gang issues involved. We find no merit in the contention that, had the allegation of gang motivation for the purpose of sentence enhancement been timely, defense counsel would have employed a different trial strategy. This case was obviously related to gang activity, and the defendant anticipated that evidence relating to gangs would be admitted. The court inferentially rejected the defendant's explanation and, on appeal, the defendant has not offered an example of a decision that was affected by the untimely allegation. He was not denied a fair trial on the substantive offenses.

¶ 37   The defendant was, however, improperly subjected to enhanced punishment because of the late allegation of gang activity. He was entitled to know before trial the full extent of the potential punishment that he faced. *Rodgers,* 134 Ariz. at 306–07, 655 P.2d at 1358–59; *see also State v. Waggoner,* 144 Ariz. 237, 238–39, 697 P.2d 320, 321–22 (1985) ("due process and orderly procedure" require that defendant receives notice before trial of state's intention to seek enhanced punishment). The defendant's awareness that gang-related facts would be presented at trial does not suffice as notice that the state intended to seek an enhanced penalty for his gang involvement as it related to the charges. There being no justification for the untimely allegation of gang activity and in the absence of any reference to A.R.S. section 13–604(T) in the indictment, the defendant was not provided with adequate notice of the state's intent to seek the enhanced penalty. Accordingly, we modify the judgment by reducing each of the sentences for the assaults and the drive-by shooting by three years, thereby becoming sentences of 15 years for each of the assaults and 21 years for the drive-by shooting.

### 4.   Constitutionality of A.R.S. Section 13–703

¶ 38   A defendant convicted of first-degree murder faces three possible sentences: death, a life sentence with release

eligibility after 25 years, or a sentence of "natural life" with no possibility of release. A.R.S. § 13–703(A). The defendant argues that this structure is unconstitutional on its face, contending that the absence of standards to guide the trial court in choosing between life and natural-life sentences renders the statute susceptible to arbitrary and capricious application.

¶ 39 There is no authority to support the defendant's argument. Thus he argues that a natural-life sentence is equivalent to a "civil death" and that the rationale of United States Supreme Court cases setting strict guidelines for the imposition of the death penalty apply by analogy.

¶ 40 In *Harmelin v. Michigan,* 501 U.S. 957, 995, 111 S.Ct. 2680, 2702, 115 L.Ed.2d 836 (1991), the Court noted that its cases creating and clarifying an "individualized capital sentencing doctrine" have repeatedly suggested that the doctrine has no application outside the capital context because death is different from all other penalties. It specifically refused to extend such a doctrine to cases involving life sentences without possibility of parole. We likewise refuse to apply it.

### 5. Defendant's Natural-life Sentence

¶ 41 The defendant also argues that the sentencing statute, as applied in his case, resulted in the arbitrary and capricious imposition of a natural-life sentence. He complains that the trial court erred by selecting among some statutory aggravating factors from A.R.S. section 13–703, which applies to first-degree murder, and some A.R.S. section 13–702 factors, which apply to other felonies. He argues that the result was a "double" counting of aggravating factors and that the court incorrectly "weighed" mitigating evidence.

¶ 42 The defendant's arguments are without merit. At the outset, the trial court had no obligation to articulate the factors it considered in choosing to impose a natural-life sentence. *State v. Sproule,* 188 Ariz. 439, 440, 937 P.2d 361, 362 (App.1996). Furthermore and contrary to the defendant's contention, the court did not say that the defendant had been convicted of one major offense, but, rather, it noted that this case involved serious multiple offenses. Nor did the court "count" any aggravating factor more than once. As to mitigation, the court discussed the defendant's age and lack of a significant criminal record, but it concluded that those factors paled in comparison to the aggravating factors that were present. The evidence supported each of the findings; we will not reverse the court's decision. *See State v. Stotts,* 144 Ariz. 72, 87, 695 P.2d 1110, 1125 (1985) (absent abuse of discretion, sentence within statutory range not reversed).

### CONCLUSION

¶ 43 The defendant's convictions are affirmed. The sentence for the duration of his natural life is affirmed. The sentence on each of the aggravated assault counts is modified to 15 years imprisonment on each count. His sentence for the drive-by shooting is modified to 21 years. In all other respects, the sentences are affirmed.

RYAN, P.J., and KLEINSCHMIDT, J., concur.