NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

GILBERTO R., *Appellant,*

*v.*

MARIA B., E.R., *Appellees.*

No. 1 CA-JV 15-0045
FILED 8-11-2015

Appeal from the Superior Court in Maricopa County
No. JS517304
The Honorable Rodrick Coffey, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm P.L.L.C., Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Maria B., Phoenix
*Appellee*

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which
Presiding Judge Diane M. Johnsen and Judge Margaret H. Downie joined.

**W I N T H R O P**, Judge:

**¶1**         Gilberto R. ("Father") appeals the juvenile court's order terminating his parental rights to E.R. ("the child"). Father does not contest that a statutory ground for severance was proven, but contends the juvenile court erred when it concluded severance of the parent-child relationship was in the child's best interest. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**         Maria B. ("Mother") and Father are the parents of E.R., a child born in 2006. Mother and Father lived together for approximately one year following the birth of the child, until their relationship ended and Mother moved into the maternal grandmother's home. After the parties' separation, Father was incarcerated from August 2007 to late December 2010. Following his release from prison in 2010, Father saw the child one time before returning to prison in July 2012.[1] During both periods of his incarceration, Father had no contact with the child.

**¶3**         In March 2014, Mother filed a petition to terminate the parent-child relationship between the child and Father, alleging two statutory grounds for termination. First, Mother asserted Father had abandoned the child because he had failed to maintain a normal parent-child relationship with the child without good cause for an extended period of time. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(1).[2] Second, Mother asserted Father had neglected the child, as Father had failed to provide basic necessities for her well-being. *See* A.R.S. § 8-533(B)(2). Mother also asserted severance of Father's parental rights would serve the best interest of the child, as Mother's husband ("Stepfather") could then adopt the child.

**¶4**         The juvenile court set a contested severance hearing for November 10, 2014. Before the hearing, the court granted a petition of the

---

[1]         Father testified at the severance hearing that he was scheduled to be released from the Arizona Department of Corrections on November 29, 2014.

[2]         We cite the current version of the statutes if no revisions material to our decision have occurred since the relevant dates.

paternal grandmother ("Paternal Grandmother") to intervene.[3]  During the contested hearing, Mother, Father, Stepfather, and Paternal Grandmother testified.  Stepfather testified he desired to adopt the child.[4]  Stepfather further testified the child's last contact with Father occurred "five or six" years ago, and since that time, Father had failed to have or initiate any contact with the child through cards or letters, or to support the child, from the point of his first incarceration to the present.  Mother then testified the child had not seen Father since 2010.  Mother also stated neither she nor Stepfather had ever obstructed Father's ability to see the child by denying Father any contact, hiding the child, or refusing cards and gifts from Father.  Mother testified Father never provided financial support for the child, and also stated that, in her opinion, Father had abandoned the child.

¶5        Paternal Grandmother testified that, although Father had given her letters to give to the child, she did not do so and did not inform Mother of the letters' existence because she did not want to "jeopardize the court [visitation] order [she] had."[5]  Paternal Grandmother also opined that Father had maintained the parent-child relationship "as best as he could."

¶6        Father testified he and Mother lived together for a year-and-a-half after the child was born.  Father stated that, during that time, he provided the sole income for Mother and the child, and he engaged in normal parental responsibilities.  Father estimated the last time he had seen the child was sometime in 2011.  He claimed he had called Mother and Stepfather numerous times while out of prison in an effort to visit the child, but "[n]othing official" was ever arranged.  Father testified he sent letters and cards to the child through Paternal Grandmother while incarcerated,

---

[3]        Paternal Grandmother alleged it was in the child's best interest to allow her to intervene due to the strong bond she had with the child.  The juvenile court had previously awarded Paternal Grandmother grandparent visitation in July 2011.

[4]        Mother asserts in her answering brief that, following the severance of Father's parental rights, Stepfather has adopted the child.

[5]        Paternal Grandmother testified that, in addition to letters, Father gave her approximately $300 for the child.  Father corroborated this statement in his testimony.  Paternal Grandmother stated she used those funds while with the child; however, neither Mother nor the child knew the funds came from Father.  Mother testified she never received any financial support from Father for the child from either Father or Paternal Grandmother.

but he was unsure whether Paternal Grandmother provided the child with those items. Father further acknowledged his imprisonments deprived him and the child of a normal parent-child relationship. Between Father's periods of incarceration, Father never sought parenting time orders in family court.

¶7 The juvenile court severed Father's parental rights on November 21, 2014. The court found Mother had demonstrated by clear and convincing evidence that Father had abandoned the child, but failed to prove Father had neglected the child. Finally, the court found it was in the child's best interest to terminate Father's parental rights.

¶8 Father timely appealed. We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, A.R.S. § 8-235(A), and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## ANALYSIS

¶9 Father appeals only the juvenile court's finding that termination of his parental rights was in the child's best interest. Unless the trial court's findings of fact were clearly erroneous, we will not disturb the court's termination order absent an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App. 2004) (citation omitted). "To justify termination of the parent-child relationship, the trial court must find, by clear and convincing evidence, at least one of the statutory grounds set out in section 8-533, and also that termination is in the best interest of the child." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12, 995 P.2d 682, 685 (2000) (citing A.R.S. § 8-533(B)).

¶10 Mother alleged two separate statutory grounds for termination: abandonment and neglect. *See* A.R.S. § 8-533(B)(1)-(2). The juvenile court found Mother proved by clear and convincing evidence that Father had abandoned the child. By failing to contest the finding of abandonment on appeal, Father has waived this issue, *see State v. Guytan*, 192 Ariz. 514, 520, ¶ 15, 968 P.2d 587, 593 (App. 1998) (arguments not raised in an opening brief are waived), and nothing in our review of the record indicates the juvenile court abused its discretion in finding abandonment.

¶11 Mother also alleged in her petition that severing Father's parental rights would be in the child's best interest, and the juvenile court found it was in the best interest of the child to sever Father's parental rights. On this record, the juvenile court did not abuse its discretion or make a clearly erroneous finding in determining the child's best interest is served by severing Father's parental rights.

**¶12** Father had not seen or spoken to the child since at least 2011, approximately three to four years before the hearing date, and although he testified he would like the opportunity "to get to know her," he admitted he did not know the child and had deprived her "of the normal parent/child relationship by [his] being incarcerated." Father had been incarcerated for more than half of the child's life, admittedly never contacted her while incarcerated, and made very few attempts to contact her during periods of his release. Mother and Stepfather testified it had been many years since Father's last contact with the child, despite a lack of interference on their part, and Father had failed to ever send any cards, letters, or financial support. The credibility of the witnesses on this issue was for the juvenile court to decide, *see Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002); however, even were we to assume Father wrote letters to the child as he testified, his selected agent, Paternal Grandmother, unilaterally chose not to deliver the letters. In the meantime, Stepfather has acted as the child's father *in loco parentis* since approximately 2007, demonstrating commitment and stability for a significant period of time.[6]

**¶13** Father's argument on appeal focuses on the ultimate effect severance of his parental rights will have on Paternal Grandmother's visitation with the child. Paternal Grandmother is not a party to this appeal, and Father may not represent her on appeal or argue in her place. Nonetheless, Father may argue the child's best interest is not served by severance because the result of severance may be that the child will be deprived of the benefit of the continued relationship she has developed with Paternal Grandmother. The juvenile court specifically addressed Paternal Grandmother's visitation rights, however, stating that severance of Father's rights "will not automatically terminate [Paternal Grandmother's] rights to visit [the child]." Further, there is no allegation or evidence that Paternal Grandmother's court-ordered visitation has been hampered by Father's parental rights being severed.

---

[6] Stepfather has either already adopted the child or is now in a position to move forward with the process of adopting the child, providing the child with further stability and permanency. "One factor the court may properly consider in favor of severance is the immediate availability of an adoptive placement." *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5, 982 P.2d 1290, 1291 (App. 1998).

**CONCLUSION**

¶14          For the foregoing reasons, we affirm the juvenile court's order terminating Father's parental rights.



Ruth A. Willingham · Clerk of the Court
F I L E D : RT