CATTANT, Judge,
dissenting:
¶ 28 I respectfully dissent from the majority’s ruling that the superior court’s failure to instruct the jurors to deliberate anew resulted in reversible error. Although I agree that an instruction to deliberate anew is required under Rule 18.5(h) when an alternate juror is substituted for an excused juror, in this case, the unobjected-to failure to instruct the jurors regarding deliberating anew did not rise to the level of fundamental, prejudicial error under State v. Henderson, 210 Ariz. 561, 115 P.3d 601 (2005).
¶ 29 Under Henderson, “[a] defendant who fails to object at trial forfeits the right to obtain appellate relief except in those rare cases that involve ‘error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial.’ ” 210 Ariz. at 567, ¶ 19, 115 P.3d at 607 (citation omitted). Henderson further holds that a defendant bears the burden of persuasion in fundamental error review to “establish both that fundamental error exists and that the error in his ease caused him prejudice.” Id. at ¶ 20.
¶30 Here, the error did not go to the foundation of the ease or take away a right essential to the defense such that Dalton “could not possibly have received a fair trial,” and Dalton has not met his burden of showing prejudice. See id. at 567-71, ¶¶ 19, 26-34, 115 P.3d at 607-10 (citation omitted).
¶ 31 The majority relies primarily on a pre-Henderson case, State v. Guytan, 192 Ariz. 514, 968 P.2d 587 (App.1998), which held that when a new juror is substituted for *82 an excused juror, it is error not to instruct jurors to deliberate anew as required by Rule 18.5, while also holding that the error in that ease did not require reversal. Contrary to the majority’s assertion, the analysis set forth in Guytan did not provide a framework for error review that “overlaps” with fundamental error review under Henderson. Moreover, in Guytan, the court in fact noted that some jurisdictions do not have a statute or rule expressly requiring an instruction such as that mandated by Rule 18.5, while further noting that in those jurisdictions, courts “typically and wisely” impose such a requirement. Id. at 521, ¶ 23, 968 P.2d at 594. But reliance on a “typical” and “-wise” approach is not coterminous with an evaluation of whether unobjected-to error is fundamental and prejudicial under Henderson.
¶ 32 Dalton does not come close to meeting his burden of establishing fundamental, prejudicial error. The jurors were correctly instructed regarding the elements of second-degree burglary and the State’s burden of proof. Compare State v. Ruiz, 236 Ariz. 317, 340 P.3d 396 (App.2014) (reversing based on instructional error relating to the State’s burden of proving the charged offense). Although the jurors were not instructed to deliberate anew, they were instructed that (1) they should not form final opinions until they had discussed the case with each other in the jury room; (2) their verdict “must be unanimous” and “everyone must agree”; (3) they were required to discuss their own personal views “as well as the views of the other jurors”; and (4) they were prohibited from “tak[ing] a vote until [they had] discussed all the evidence in this ease.” There is no indication whatsoever that the jurors who decided this case failed to understand and comply with these directives. See also State v. LeBlanc, 186 Ariz. 437, 439, 924 P.2d 441, 443 (1996) (reiterating presumption that jurors follow their instructions).
¶ 33 In light of our standard of review, and absent some indication otherwise, the majority errs by hypothesizing that the jurors voted without discussing all the evidence in the case or that all of the jurors did not agree on the verdict. Moreover, the jurors were individually polled in this ease, and every juror— including the alternate juror—confirmed that the verdict was his/her true verdict. Under these circumstances, the failure to instruct the jurors as required by Rule 18.5 was not prejudicial error of such magnitude that Dalton could not possibly have received a fair trial.
¶ 34 The majority’s reliance on Guytan is further undermined by the absence in the instant case of the particular concern underlying the discussion of error in Guytan:
The requirement that jurors begin deliberations anew after a substitution guards against the potential problems that substitution poses. In particular, if deliberations have begun, some issues already may have been decided as a practical matter. In that case, there is an inherent risk that the resulting verdict as to those issues will reflect only the views of the original jurors, thereby depriving the defendant of his right to unanimity from the requisite number of jurors.
192 Ariz. at 521, ¶ 22, 968 P.2d at 594 (emphasis added) (citing People v. Burnette, 775 P.2d 583, 588 (Colo.1989); People v. Collins, 17 Cal.3d 687, 131 Cal.Rptr. 782, 552 P.2d 742, 746 (1976)).[8]
¶ 35 Here, there is no evidence—or even suggestion—that the jurors decided “some issues” relating to Dalton’s conviction before the substitute juror joined in deliberations. *83 Dalton was convicted of only one offense— burglary—stemming from his alleged involvement with another man, Brian Day, in taking a swamp cooler from a vacant home. Dalton testified at trial and acknowledged that he was trespassing by sleeping at the vacant residence, but claimed he did not know Day planned to remove the swamp cooler, and that his only involvement was persuading Day to leave the house with him so Day would not “get[ ] in trouble.”
¶ 36 Given Dalton’s admission to being present at the scene of the burglary and leaving with Day, the only question for the jurors was whether they believed Dalton’s testimony that he did not intend to assist in removing the swamp cooler. Answering that question did not involve a complex inquiry, and there were no other issues to resolve; thus the concern underlying Guytan is absent and undermines any assertion of prejudice resulting from the unobjected-to failure to give the Rule 18.5 instruction.
¶37 The majority cites the fact that the jurors “deliberated for approximately two hours before the alternate joined it, but for less than 45 minutes afterwards.” But the pre-substitution deliberations included selecting a foreperson and asking and waiting for an answer to a question, “[w]hy wasn’t the 911 caller subpoenaed,” that was not relevant to resolving the burglary charge. Thus, the pre-substitution deliberations were not necessarily extensive, and, again, there is no evidence that any issues were resolved during those deliberations.
¶ 38 The fact that the jurors returned a verdict less than 45 minutes after the substitute juror joined the jury does not establish fundamental error or resulting prejudice. As noted above, this was a simple case, and the relatively short period of post-substitution deliberations is not surprising given the lack of complexity involved in deciding whether Dalton was believable when he denied assisting with the burglary (while admitting to being present and trespassing).
¶ 39 A substitute juror can properly reach a verdict without having participated in every discussion relevant to the ultimate issue as long as the substitute juror fully deliberates and reaches an independent verdict. See State v. Tucker, 215 Ariz. 298, 319, ¶ 83, 160 P.3d 177, 198 (2007) (finding no error—and no need for a Rule 18.5 instruction—when a juror is substituted between the aggravation and penalty phases of a capital case sentencing proceeding notwithstanding some degree of overlap in issues considered in the two phases) (citing State v. Roseberry, 210 Ariz. 360, 372-73, ¶ 71, 111 P.3d 402, 414-15 (2005)).
¶ 40 Here, any suggestion that the substitute juror did not fully deliberate is simply speculation and improperly ignores the substitute juror’s affirmative statement that the verdict of guilt represented her true individual verdict. See State v. Kiper, 181 Ariz. 62, 68, 887 P.2d 592, 598 (App.1994) (“The purpose of polling the jury is to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned, and thus to enable the court and the parties to ascertain with certainty that a unanimous verdict has in fact been reached[.]”) (quotation omitted). There is nothing in the record suggesting that issues were resolved prior to the dismissal of the excused juror, and the remaining jurors and the substitute juror were adequately instructed regarding their duty to reach a unanimous verdict.
¶ 41 Under the circumstances, and particularly in light of the fact that the jurors all individually confirmed their verdicts (without any hint of ambivalence) when they were polled following deliberations, Dalton has not met his burden of establishing that this is the “rare case” in which the unobjected-to instructional error resulted in prejudice and was of such magnitude that it cannot be said that he received a fair trial. Accordingly, I would affirm his conviction and sentence.

. As the majority notes, the Guytan court listed four “problems inherent” in substituting an alternate juror once deliberations have begun: (1) the other jurors may have already resolved relevant issues, leaving the alternate no opportunity to express her views and persuade others; (2) the alternate would not have the benefit of the discussions and dynamics of prior deliberations; (3) the alternate would not have the benefit of the unavailable juror’s views; and (4) the unavailable juror might have feigned a conflict for some improper purpose. See supra ¶ 8; Guytan, 192 Ariz. at 518, ¶ 11, 968 P.2d at 591. But an instruction to "deliberate anew” does not address the second and third concerns. And the fourth concern—that the unavailable juror left deliberations for some impermissible reason—is not implicated in this case; the excused juror asked to be relieved of her duties because of child care issues. Accordingly, the only issue remaining—and the one on which Guytan focused as well—is whether some issues have already been decided.