NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee/Cross-Appellant*,

*v.*

KERRY MICHAEL WRIGHT, *Appellant/Cross-Appellee*.

No. 1 CA-CR 25-0192

FILED 04-27-2026

Appeal from the Superior Court in Yavapai County
No. S1300CR202380088
The Honorable Michael R. Bluff, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

C. Kenneth Ray II, P.L.L.C., Prescott
By C. Kenneth Ray II
*Counsel for Appellant/Cross-Appellee*

Arizona Attorney General's Office, Phoenix
By Casey D. Ball
*Counsel for Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge James B. Morse Jr. joined.

---

**F U R U Y A**, Judge:

¶1          Kerry Wright appeals from his various convictions and resulting sentences. Wright contends the trial court erred in failing to suppress evidence related to Counts 4 through 12 of his indictment. The State, in its cross-appeal, maintains that the trial court erred in not enhancing Wright's sentences on Counts 4 through 6. For the following reasons, we affirm Wright's convictions but vacate his sentences and remand to the trial court for resentencing based on this decision.

## FACTS AND PROCEDURAL HISTORY

¶2          In February 2023, Wright was arguing with his granddaughter and her boyfriend over household chores. Wright had been drinking and grew increasingly upset over the argument, leading to Wright holding a gun to his granddaughter's head. The granddaughter's boyfriend grabbed his own gun and fired three warning shots into the ceiling to distract Wright.

¶3          Wright then fired multiple shots through the wall, striking the boyfriend in the neck. The bullet went through the back of the boyfriend's neck and exited just under his eye. Wright inspected the boyfriend and thought he had died, so both he and his granddaughter called 911 and paramedics responded.

¶4          The paramedics were unable to enter the house until it was secured, so officers entered under the cover of a ballistic shield, removed the boyfriend, and brought him to first responders for medical attention. The boyfriend was flown to a hospital and survived his injuries.

¶5          Then, officers established a perimeter around the house where Wright remained and requested assistance from a SWAT team. Over multiple phone calls and in the ensuing hours, Wright threatened several times to shoot anyone that came into the house and to shoot himself.

¶6          When Wright failed to exit the house after talking with a negotiator, the SWAT team deployed chemical munitions into the house.

2

After this, Wright filed a single shot at one of the SWAT armored vehicles, hitting its windshield. The SWAT team continued to deploy chemical munitions, but Wright refused to exit the house. As the SWAT team prepared to use their vehicles to push open the windows, Wright finally exited the house and was arrested.

¶7        A grand jury indicted Wright for one count of attempted second-degree murder (Count 1), five counts of aggravated assault (Counts 2–6), one count of criminal damage (Count 7), and five counts of disorderly conduct (Counts 8–12). The State also alleged aggravating circumstances, citing "A.R.S. § 13-709.01" in the indictment.

¶8        The jury acquitted Wright on Counts 1 through 3 and convicted him as charged on Counts 4 through 12. The jury also found that the State proved one aggravating circumstance for Counts 4 through 6 but did not prove an aggravating circumstance on Counts 8 through 12. In its sentencing memorandum, the State argued that pursuant to A.R.S. Section 13-1204(C), the sentences for Counts 4, 5, and 6 should not be less than the presumptive term and ineligible for suspension, commutation, or release until served. The trial court declined to enhance the sentences, finding the State failed to provide adequate notice that it intended to enhance the sentences on Counts 4 through 6. Thus, the court imposed concurrent presumptive terms of 10.5 years for Counts 4 through 6 with various lesser concurrent sentences for Counts 7 through 12.

¶9        Wright timely appealed and the State timely cross-appealed. We have jurisdiction under Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(1), 13-4031, 13-4032(5), and 13-4033(A).

## DISCUSSION

### I.        Wright's Argument Improperly Raises an Ineffective Assistance of Counsel Claim on Direct Appeal, Which We Decline to Review.

¶10        Wright contends "fundamental and prejudicial error" occurred when his attorney failed to file a motion to suppress the evidence relating to "the warrantless casting of [chemical and gas] cannisters into" Wright's home, because "such would have been dispositive of Counts 4 through 12." But when a defendant fails to challenge the admissibility of his statements by filing a motion to suppress, he waives the issue on appeal. *See State v. Tison*, 129 Ariz. 526, 535 (1981) ("Issues concerning the suppression of evidence which were not raised in the trial court are waived

on appeal."). Wright's failure to file such a motion at trial constitutes waiver of the issue on direct appeal.

¶11        True, Arizona courts can, as a matter of discretion, review suppression issues for fundamental error. *See State v. Newell*, 212 Ariz. 389, 398 ¶ 34 (2006) (noting that courts "may" review a suppression argument raised for the first time on appeal for fundamental error). But "[i]t is highly undesirable to attempt to resolve issues for the first time on appeal, particularly when the record below was made with no thought in mind of the legal issue to be decided." *State v. Brita*, 158 Ariz. 121, 124 (1988).

¶12        Because the parties did not litigate this issue below, we do not have a complete record from which we can determine whether evidence should have been suppressed. We decline to conduct fundamental-error review because we lack evidence and context from which we could do so. *See State v. Estrella*, 230 Ariz. 401, 403–04 n.1 (App. 2012) (enforcement of waiver standards "especially appropriate" when, due to failure to raise issue below, "our record is wholly inadequate" for determination of that claim).[1]

¶13        Further, Wright's argument constitutes a claim for ineffective assistance of counsel that Wright raises on direct appeal. The Arizona Supreme Court has held that "ineffective assistance of counsel claims are to be brought in [Arizona Rule of Criminal Procedure ("Rule")] 32 proceedings." *State v. Spreitz*, 202 Ariz. 1, 3 ¶ 9 (2002). Therefore, "[a]ny such claims improvidently raised in a direct appeal . . . will not be addressed by appellate courts regardless of merit." *Id.*

¶14        Wright contends his argument is "more about whether evidence should have been received at Trial and less about the procedural mechanism and/or legal characterizations/terminologies that, had such procedures been employed, would have prevented its admission at Trial," but we disagree. To the extent Wright faults his trial counsel for failing to move to suppress the evidence offered at trial related to the gas and chemical cannisters employed by the police, his argument constitutes a

---

[1]        Even if we were to reach his arguments regarding the violation of the Fourth Amendment, they have no merit. *See, e.g.*, *Case v. Montana*, 146 S. Ct. 500, 508–09 (2026) (holding that officers do not violate the Fourth Amendment when they reasonably believe they are entering a home to prevent an occupant from injuring themselves or others).

claim of ineffective assistance of counsel that cannot be raised on direct appeal. *Id.*

¶15 Because of its procedural deficiencies, Wright is therefore not entitled to direct appellate relief on this basis and must raise this claim, if at all, in a post-conviction proceeding with the evidence and context required. *See id.* We express no opinion on the merits of his ineffective assistance argument. But we deny fundamental error review of this claim and will not reverse Wright's convictions on these grounds.

## II. The Trial Court Erred by Failing to Enhance the Sentences on Counts 4 through 6.

¶16 In its cross-appeal, the State argues that "[a]lthough the indictment erroneously cited to the former version of the enhancement statute, this minor defect did not deprive Wright of notice that, if convicted on Counts 4–6, his sentence would be subject to enhancement." Therefore, the State argues, the trial court erred in refusing to enhance Wright's sentences for Counts 4 through 6. "Sentencing determinations are reviewed for abuse of discretion." *State v. Davolt*, 207 Ariz. 191, 216 ¶ 112 (2004).

¶17 To satisfy due process, the State is required to provide notice before trial that it intends to seek enhanced punishment. *State v. Francis*, 224 Ariz. 369, 371–72 ¶¶ 11–12 (App. 2010). This notice "enables a defendant to know the full range of potential punishment he faces upon conviction[.]" *State v. Benak*, 199 Ariz. 333, 336–37 ¶ 14 (App. 2001). Notice must be such that the defendant is not "misled, surprised or deceived in any way by the allegations." *State v. Bayliss*, 146 Ariz. 218, 219 (App. 1985). Thus, "the state must specifically allege that it seeks enhancements for violent crimes . . . or dangerous offenses." *Francis*, 224 Ariz. at 372 ¶ 12.

¶18 Here, the court denied the request to enhance Wright's sentences at trial and cited *State v. Guytan*, 192 Ariz. 514 (App. 1998), for the proposition that timely allegations for an enhanced sentence were required. But this reliance is misplaced. In *Guytan*, the State requested to amend the indictment one week after the trial had begun and nine days after the jury had been impaneled, therefore making it untimely under Rule 16.1(b) which requires that motions be made no later than twenty days prior to trial. *Guytan*, 192 Ariz. at 522 ¶ 30. Therefore, the defendant in *Guytan* had received insufficient notice that the State sought to enhance his sentences. *Id.* at 523 ¶ 37.

¶19 In *State v. Tresize*, however, our supreme court ruled that a defendant was given sufficient notice of a sentencing enhancement when

the State alleged the use of a deadly weapon or dangerous instrument in the indictment, even though it did not make a separate allegation or include a citation to the relevant statute in the indictment. 127 Ariz. 571, 574 (1980). The facts which were necessary to support the enhancement had been alleged in the indictment and therefore, the supreme court found "no resulting prejudice or surprise from the omission of the citation[.]" *Id.*

**¶20**        In contrast to *Guytan*, the State here included language in its indictment related to the State's intention to seek sentencing enhancement and referenced relevant statutes more than twenty days ahead of the first trial date. Specifically, the State cited "A.R.S. § 13-709.01," a repealed former version of the sentencing enhancement statute in the indictment. The current version of the enhancement statute, which is now located in A.R.S. Section 13-1204(C), states:

> A person who is convicted of intentionally or knowingly committing aggravated assault on a first responder pursuant to subsection A, paragraph 1 or 2 of this section shall be sentenced to imprisonment for not less than the presumptive sentence authorized under chapter 7 of this title and is not eligible for suspension of sentence, commutation or release on any basis until the sentence imposed is served.

Although the State did not specifically cite A.R.S. Section 13-1204(C) in its indictment, the indictment alleges facts that satisfy the requirements of that statute; i.e., "intentionally or knowingly committing aggravated assault on a first responder," similar to the allegations in the indictment in *Tresize*. The State alleged that Wright "using a firearm, a deadly weapon or dangerous instrument, intentionally did place [the injured person], a peace officer engaged in official duties, in reasonable apprehension of imminent physical injury[,]" and cited A.R.S. Section 13-1204(A)(2) for its aggravated assault allegation.

**¶21**        While best practice would have been to cite the current sentencing enhancement statute or file a separate notice of intent to enhance sentences, the record demonstrates that Wright had sufficient notice to satisfy the requirements of Due Process. *See Tresize*, 127 Ariz. at 574. The State sufficiently indicated its intent to apply the enhancement statute by including a reference to the aggravated assault statute, alleging that the injured person was a peace officer, and including a citation to the former version of the enhancement statute. The mere correction of an outdated citation could not have altered Wright's trial strategy, since the jury was instructed only on the elements that would satisfy the sentencing

enhancement and Wright's defense had already contemplated challenging these elements.

**¶22**      The court erred when it refused to enhance Wright's sentence pursuant to A.R.S. Section 13-1204(C). We vacate the court's sentencing order and remand for resentencing.

## CONCLUSION

**¶23**      We affirm Wright's convictions, vacate the sentencing order, and remand to the superior court for resentencing consistent with this decision.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:            JR